# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Tyler W. Hedgepath,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>East Richland County Public Service District, and Larry Brazell, Jack Morin, and Jamie Harris in their individual capacities,<br><br>　　　　　　　　Defendants. | **COMPLAINT**<br>(Jury Trial Demanded)<br><br>(Fair Labor Standards Act Retaliation; S.C. Payment of Wages Act; Wrongful Discharge in Violation of Public Policy; S.C. Whistleblower Act; Defamation; Intentional Infliction of Emotional Distress; Civil Conspiracy) |

Plaintiff Tyler W. Hedgepath (hereinafter "Plaintiff"), complaining against the Defendants East Richland County Public Service District, Larry Brazell, Jack Morin, and Jamie Harris (collectively referred to herein as "Defendants"), would respectfully show unto this Honorable Court as follows:

## PARTIES, JURISDICTION, AND VENUE

1.　　Plaintiff is a citizen and resident of Kershaw County, South Carolina. He was employed as a laborer for Defendant East Richland County Public Service District for about seven years.

2.　　Defendant East Richland County Public Service District ("Defendant East Richland") is a public nonprofit organization that serves residential and commercial customers in East Richland County, by way of collection and treatment of sewage, and whose headquarters are located at 704 Ross Rd., Columbia, SC 29223.

1

2

3. Defendant Larry Brazell ("Defendant Brazell") is the Executive Director of Defendant East Richland and, upon information and belief, is a resident of Richland County, South Carolina.

4. Defendant Jack Morin ("Defendant Morin") is the Superintendent of Defendant East Richland and, upon information and belief, is a resident of Kershaw County, South Carolina.

5. Defendant Jamie Harris ("Defendant Harris") is the Field Coordinator of Defendant East Richland and, upon information and belief, is a resident of Kershaw County, South Carolina.

6. All acts and omissions alleged against Defendants herein occurred during the time which Plaintiff was an employee of Defendant East Richland, or shortly after he was terminated.

7. This Court has subject matter jurisdiction to hear this matter based upon 28 U.S.C. § 1331 (Federal Question Jurisdiction) and 28 U.S.C. § 1367 (Supplemental Jurisdiction).

8. Venue is proper in this division pursuant to 28 U.S.C. § 1391, as Plaintiff resides in and Defendant East Richland's offices are located in the Columbia Division of the South Carolina District, and as the events which are the basis of these claims took place there.

## **FACTS**

9. Plaintiff began working for Defendant East Richland on July 8, 2014 as a laborer.

10. During Plaintiff's employment with Defendant East Richland, Plaintiff never received any formal disciplinary actions.

11. During Plaintiff's employment with Defendant East Richland, he never received any negative performance evaluations from Defendant East Richland.

12. Plaintiff noticed throughout his employment that management for Defendant East Richland was affected by nepotism in the following ways:

  a. Upon information and belief, most of the foremen and other employees of Defendant East Richland are related by blood or marriage to one another.

  b. Upon information and belief, Defendant Brazell hired Defendant Morin, his son-in-law, to work for Defendant East Richland.

  c. Upon information and belief, Defendant Brazell is the father-in-law of Charley Hunt, who works as a mechanic for Defendant East Richland.

  d. Upon information and belief, Defendant Brazell is the grandfather of Brad Hunt, who is a camera man for Defendant East Richland.

  e. Upon information and belief, Stephen Morgan is married to Defendant Morin's sister.

  f. Upon information and belief, Defendant Harris is related by marriage to Defendant Brazell and Morin.

13. Plaintiff observed that Defendants Brazell, Morin, and Harris used their positions at Defendant East Richland to provide employment at inflated pay rates for family members at the taxpayers' expense.

14. Defendants Brazell, Morin, and Harris provided pay raises and promotions to their family members and passed over unrelated employees for pay raises and employees.

15. Throughout Plaintiff's employment, Defendants targeted Plaintiff because he was not related to Defendants by blood or marriage.

16. Plaintiff observed Defendants displaying favoritism toward employees who were related.

17. Defendants Brazell, Morin, and Harris hired relatives for similarly situated positions as Plaintiff's, but at rates significantly higher than what they paid Plaintiff.

18. Defendants Brazell, Morin, and Harris required Plaintiff to handle emergency dig-ups after hours when other employees who were related to them were allowed to go home.

19. Defendants Brazell, Morin, and Harris required Plaintiff to work in raw sewage with insufficient personal protective equipment and did not require other related employees to do so.

20. Defendants Brazell, Morin, and Harris required Plaintiff to work in the middle of a roadway without the proper road shutdowns in place, putting him in danger, and did not require other related employees to do so.

21. Defendants kept employees' times, overtime, and annual leave using a clipboard in office with one sheet of paper with each employee's name.

22. Defendants expected employees to log their hours as "8-4" regardless of actual hours worked and frequently required employees to change their timesheets to remove time they viewed as excessive.

23. Defendants required that overtime be pre-approved, and even after pre-approval was obtained, it was common for employees not to be paid overtime wages when employees incurred overtime hours.

24. In May 2020, Plaintiff and co-worker Jason Dent ("Dent") discussed their concerns about workplace conditions. They decided to file complaints to various agencies regarding working conditions.

25. Between about June 6, 2020 and June 11, 2020, Plaintiff made complaints against Defendants to the South Carolina Office of Inspector General, the South Carolina Department of Labor, Licensing, and Regulation, and the United States Department of Labor about nepotism, unsafe working conditions, failure to pay wages, and for failure to accurately account for employee time and paid time off.

26. On or about June 12, 2020, Dent made a complaint to the South Carolina Office of Inspector General raising the same or similar concerns that Plaintiff had raised previously in his complaint.

27. Upon information and belief, on June 22, 2020 Defendant Brazell falsely told the Richland County Sheriff's Department that Plaintiff "has made threats to shoot up the place."

28. On June 22, 2020, at around 10:00 a.m., Defendant assigned Plaintiff, Dent, and another co-worker to a task in the field.

29. Shortly after the work assignment, Defendant Harris picked up Plaintiff from the task in the field to go to Defendant East Richland's office.

30. When Plaintiff and Defendant Harris arrived back at the office, Plaintiff found seven or eight employees, three cop cars, and three law enforcement officers located in front of the office. One officer was standing in ready position with his hand on his firearm.

31. Defendant Brazell then told Plaintiff: "I hate to do it, but I no longer need your services." Plaintiff asked Defendant Brazell why he was being terminated, but Defendant Brazell refused to provide any explanation.

32. Plaintiff then went to his personal vehicle and drove off site.

33. Defendant Brazell later asked Plaintiff to return to the office to pick up Plaintiff's last paycheck and return his uniforms.

34. Defendant Harris texted Plaintiff to ask him to pick up these items at the worksite on Tuesday, June 29, 2020.

35. Plaintiff returned to the worksite, as requested, on June 29, 2020 at about 9:00 a.m., with his stepfather, David Lee. There was one law enforcement officer present.

36. Defendant Brazell asked Plaintiff to come back to his office so he could give Plaintiff his last paycheck and so Plaintiff could return his uniforms.

37. Defendant Brazell showed no fear for his safety and repeatedly apologized to Plaintiff.

38. During conversation, Defendant Brazell spontaneously said "I've had several employees come up to me to ask if LLR is going to shut the building down."

39. Defendant Brazell then referred, vaguely, to "messages" sent by Plaintiff saying he saw them and he could not believe that Plaintiff "said that."

40. When Plaintiff asked for more information, Defendant Brazell would not elaborate.

41. All of these statements were made in the presence of David Lee, Plaintiff's step-father.

42. Defendant East Richland never provided any written explanation or termination letter to Plaintiff which would help him understand why he was terminated.

43. Plaintiff sought to file a grievance pursuant to the County and Municipal Employees Grievance Procedure Act, S.C. Code Ann. § 8-17-110 *et seq.*, but Defendants refused to allow him to do so, claiming there was no such policy.

44. Plaintiff's final check was about $700 short, and Plaintiff was not paid for any of his accumulated Paid Time Off ("PTO"), of which he had accumulated about ten days.

45. On July 2, 2020, Defendant Brazell reported to the South Carolina Department of Employment and Workforce that Plaintiff had been discharged for "threatening harm to his fellow employees as well as the property of his employer."

46. Plaintiff never threatened harm to his fellow employees or to the property of his employer.

47. Defendant East Richland's policy manual requires a full investigation of allegations of threats or workplace violence.

48. Defendants never investigated allegations of threats of workplace violence made by Plaintiff.

49. Defendants never asked Plaintiff about the supposed allegations of threats or workplace violence prior to discharging him.

50. In July 2020, Defendant Morin called a meeting of all the Defendant East Richland employees that worked in the maintenance department. At the meeting,

Defendant Morin told the attendees that no one was allowed to talk to Plaintiff or their jobs would be in jeopardy.

51. Upon information and belief, Defendants Brazell, Morin, and Harris have spread the false allegation that Plaintiff threatened to kill a co-worker and his wife, that he threatened to blow up a building, and that he threatened to shoot up the building with an AR-15 assault rifle.

52. Plaintiff did not threaten to kill a co-worker and his wife.

53. Plaintiff did not threaten to blow up a building.

54. Plaintiff did not threaten to shoot up a building with an AR-15 assault rifle.

55. Defendants alleged, in unemployment benefit proceedings before the South Carolina Department of Employment and Workforce, that Plaintiff had threatened co-worker Jason Dent and his wife. However, in a signed, written statement dated March 9, 2021, Dent repudiated any claimed threat, stating "Ive [sic] never seen or heard of Tyler threatening anyone and I've known his [sic] for a while. And I never have thought he was gonna lose his temper at all. He is not the dangerous person they are trying to make him out to be. It is all fabricated and made up. And I will not be a witness for the county nor will I lie for them."

56. On or about June 29, 2020, after Defendant East Richland terminated Plaintiff, Defendant East Richland issued Plaintiff a final paycheck which was short by approximately $700 and which was also missing approximately ten days of accrued PTO.

57. On June 29, 2020, Defendant Brazell admitted knowledge of Plaintiff's complaint to the South Carolina Department of Labor, Licensing, and Regulation.

58. Plaintiff has exhausted his administrative remedies.

8

59. Plaintiff, a single father of a four-year-old girl, has been financially devastated by the allegation, and has been placed under enormous stress due to the harm to his reputation and the impact Defendants' false and malicious allegations could have had in ongoing child custody litigation.

60. Defendants knew that Plaintiff was in the midst of a child custody dispute, and that their false claims of violent threats could potentially jeopardize custody of his child.

61. Defendants also knew that Plaintiff held a federal firearms license, and that their false claims of violent threats could jeopardize his license.

**FOR A FIRST CAUSE OF ACTION**
Against Defendants East Richland and Brazell
Fair Labor Standards Act Retaliation
(29 U.S.C. § 215(a)(3))

62. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

63. At all relevant times, Plaintiff was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e).

64. At all relevant times, Defendant East Richland was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203, because it is a public agency and because it has annual sales or business of at least $500,000.

65. At all relevant times, Defendant Brazell was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203, because he acted directly or indirectly in the interest of Defendant East Richland in relation to Plaintiff.

66. Plaintiff engaged in protected activity within the meaning of the FLSA when he made a wage complaint to the United States Department of Labor.

67. Defendants had knowledge of Plaintiff's complaint to the U.S. Department of Labor.

68. Defendants demonstrated animus and willful hostility toward Plaintiff by fabricating a pretextual reason to discharge him.

69. Defendant East Richland, through its agents and employees Defendants Brazell, Morin, Harris, and others, retaliated against Plaintiff for engaging in protected activity within the meaning of the FLSA by fabricating a pretextual reason to discharge him, by contacting law enforcement to humiliate him, and by withholding his wages.

70. Defendants' retaliating against Plaintiff was willful as that term is defined by the FLSA.

71. Plaintiff suffered damages as a result, including, but not limited to, loss of income and benefits, mental anguish, humiliation, harm to his reputation, and loss of sleep.

**FOR A SECOND CAUSE OF ACTION**
Against Defendants East Richland and Brazell
Violation of the South Carolina Payment of Wages Act
(S.C. Code Ann. § 41-10-10, *et seq.*)

72. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

73. Plaintiff asserts this claim for damages and declaratory relief under the South Carolina Payment of Wages Act ("Act"), S.C. Code Ann. § 41-10-10, *et seq.*

74. At all times relevant herein, Defendants East Richland and Brazell were "employers" of Plaintiff as defined in S.C. Code Ann. § 41-10-10(1).

75. Defendant Brazell had control over and was responsible for the nonpayment of Plaintiff's wages and is therefore himself considered Plaintiff's Employer.

76. All monies owed to Plaintiff by Defendants East Richland and Brazell constitute "wages" as defined in S.C. Code Ann. § 41-10-10(2).

77. On or about June 29, 2020, Defendant East Richland issued Plaintiff a final paycheck which was short by approximately $700 and which was also missing approximately ten days of accrued PTO.

78. To date, Plaintiff has not received the full compensation he earned and accrued during his employment with Defendants East Richland and Brazell.

79. Pursuant to the Act, Plaintiff brings this action to recover unpaid wages and monetary damages owed for labor rendered or any compensatory benefits due, including PTO, vacation, holiday, sick leave, or any other payments due to Plaintiff under any employer policy or employment contract.

80. Upon information and belief, Defendants East Richland and Brazell have not paid Plaintiff all wages due since Plaintiff's termination on or about June 20, 2020.

81. Defendants East Richland and Brazell have violated Section 41-10-50 of the Act in failing to pay Plaintiff all wages due and within the time frame as statutorily required.

82. Defendants East Richland and Brazell's failure to pay Plaintiff all wages due is willful and without justification.

83. Plaintiff is entitled to recovery in the amount equal to three times the full amount of his unpaid wages, prejudgment and post judgment interest, and costs and reasonable attorney's fees incurred in prosecuting this action pursuant to Section 41-10-80(c).

## **FOR A THIRD CAUSE OF ACTION**
Against All Defendants
Wrongful Discharge in Violation of South Carolina Public Policy

84. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

85. The South Carolina Legislature has expressed a strong public policy in support of the payment of wages, as found in the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10, *et seq.*

86. It is a violation of public policy for an employer to discharge an employee for making complaints of unpaid wages, including contacting relevant administrative agencies regarding concerns of unpaid wages.

87. The South Carolina Legislature has expressed a strong public policy in support of safe workplace conditions. S.C. Code Ann. § 41-15-10, *et seq.*

88. It is a violation of public policy for an employer to discharge an employee for making complaints of unsafe workplace conditions, including contacting relevant administrative agencies regarding those conditions.

89. The South Carolina Legislature has expressed a strong public policy in support of safe workplace conditions. S.C. Code Ann. § 41-15-10, *et seq.*

90. It is a violation of public policy for a public agency employer to discharge an employee for making complaints of unethical practices.

91. The South Carolina Legislature has expressed a strong public policy against unethical behavior of public employees. Pursuant to S.C. Code Ann. § 8-13-700(A),

> No public official, public member, or public employee may knowingly use his official office, membership, or employment to obtain an economic interest for himself, a family member, an individual with whom he is associated, or a business with which he is associated….

12

92. Defendant East Richland's purported basis for discharge, a shifting series of claims of supposed threats against one or more co-workers and their family members, is false.

93. Plaintiff, at all times relevant to this claim, carried out the functions of his job competently and in accordance with Defendant East Richland's policies.

94. Defendant East Richland's purported basis for Plaintiff's termination is pretextual and retaliatory.

95. Defendants Brazell, Morin, and Harris, Plaintiff's former managers, knew the allegations against Plaintiff were false.

96. On June 29, 2020, Defendant Brazell admitted knowledge of Plaintiff's complaint to the South Carolina Department of Labor, Licensing, and Regulation.

97. Defendants knowingly and willfully discharged Plaintiff for making complaints of unpaid wages, working conditions, and ethical concerns about nepotism and misappropriation of funds on a pretextual basis in violation of public policy.

98. As a result of Defendants' wrongful actions, Plaintiff suffered damages, including lost wages and benefits associated with employment, as well as mental anguish, anxiety, loss of sleep, and harm to his reputation.

99. Plaintiff will continue to incur expenses, costs, and attorneys' fees as a result of prosecuting this action.

100. Defendants are liable to Plaintiff for actual, compensatory, and punitive damages.

**FOR A FOURTH CAUSE OF ACTION**
Against All Defendants
South Carolina Whistleblower Act

101.   Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

102.   Defendant East Richland is a "public body" as defined by S.C. Code Ann. § 8-27-10(1).

103.   Plaintiff was an employee of Defendant East Richland as defined by S.C. Code Ann. § 8-27-10(1).

104.   When Plaintiff made reports of nepotism and unsafe working conditions to the South Carolina Department of Labor, Licensing, and Regulation and the South Carolina Office of Inspector General, Plaintiff made reports of nepotism and unsafe working conditions to "appropriate authorit[ies]" as defined by S.C. Code Ann. § 8-27-10(3).

105.   Plaintiff's report of nepotism and unsafe working conditions to various agencies, including the South Carolina Department of Labor, Licensing, and Regulation and the South Carolina Office of Inspector General, constitutes "reports" of "whistleblowing" of illegal or unethical conduct pursuant to S.C. Code § 8-27-10 *et seq.*

106.   Defendants knew that Plaintiff had reported nepotism and unsafe working conditions to the South Carolina Department of Labor, Licensing, and Regulation and the South Carolina Office of Inspector General when Defendant East Richland terminated Plaintiff.

107.   Defendants retaliated against Plaintiff for reporting illegal or unethical conduct to the appropriate authorities.

108. As a result of Defendants' wrongful actions, Plaintiff suffered damages, including lost wages and benefits associated with employment, as well as mental anguish, loss of sleep, anxiety, and harm to his reputation.

109. Plaintiff will continue to incur expenses, costs, and attorneys' fees as a result of prosecuting this action.

**FOR A FIFTH CAUSE OF ACTION**
Against All Defendants
Defamation *Per Se*

110. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

111. Plaintiff is a private figure.

112. Defendants made statements to each other and to others that Plaintiff made threats against Defendant East Richland's property and employees.

113. Plaintiff did not make any threats against Defendant East Richland's property or employees.

114. Defendants' false statements constitute defamation *per se* because they concern threats of violence which constitute the commission of a crime of moral turpitude.

115. Plaintiff was defamed by statements and actions of the individual Defendants as agents and servants of Defendant East Richland acting in the course and scope of their employment.

116. Defendants' allegations that Plaintiff made threats were false, including Defendants' claims that Plaintiff has made threats to harm co-workers, their spouses, and damage company property.

15

117. Defendants' communications were published with bad faith and without any reasonable effort to first determine the truth or falsity of the allegations they contained.

118. Publication includes, but is not limited to, statements made to the Richland County Sheriff's Department, statements made in the presence of Plaintiff's co-workers, and statements made in the presence of Joey Lee, Plaintiff's stepfather.

119. Further, Defendants' conduct in calling law enforcement and terminating Plaintiff without an investigation, in violation of Defendants' policies and procedures, amounts to defamation *per se* because such conduct leads others to believe that Plaintiff is unfit to participate in his profession.

120. The false statements and actions were not privileged, as there was no duty to furnish the information to the recipients, and they circulated to persons other than Plaintiff and his superior, injuring his professional reputation.

121. As a result of Defendants' communications and conduct, Plaintiff has suffered actual damages, including but not limited to loss of income and benefits, mental anguish, humiliation, harm to his reputation, and loss of sleep.

122. Plaintiff is entitled to recover actual and punitive damages from Defendants in an amount to be determined by the jury.

### FOR A SIXTH CAUSE OF ACTION
Against All Defendants
Intentional Infliction of Emotional Distress

123. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

124. Defendants intentionally or recklessly inflicted severe emotional distress upon Plaintiff as alleged in detail above.

125. Defendants' conduct was so extreme and outrageous that it exceeds all possible bounds of decency and is furthermore atrocious and utterly intolerable in a civilized community.

126. The actions of Defendants have caused Plaintiff to suffer severe emotional distress.

127. The emotional distress suffered by Plaintiff is so severe that no reasonable person could be expected to endure it.

128. Plaintiff is entitled to recover in this action actual damages from Defendants sufficient to compensate him for his emotional distress.

129. Plaintiff is entitled to an award of punitive damages against Defendants in an amount to be determined by a jury sufficient to deter Defendants and others from engaging in such outrageous conduct in the future.

## FOR A SEVENTH CAUSE OF ACTION
Against All Defendants
Civil Conspiracy

130. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

131. Defendants Brazell, Morin, and Harris, individually and as agents of Defendant East Richland, conspired to injure Plaintiff through the conduct set forth in detail above.

132. These individual Defendants met, conspired, schemed, and planned with others to harm Plaintiff for his speaking up about workplace conditions, and because his speaking up endangered the fiefdom that they built through nepotism.

133. As part of their efforts, Defendants made a false and meritless call to the

Richland County Sheriff's Department, which constitutes an overt act.

134. Such actions taken by Defendants and others amount to an unlawful civil conspiracy and approximately caused special damages to the Plaintiff.

135. Plaintiff is further entitled to an award of punitive damages from the Defendants for their intentional, malicious, and evil actions.

WHEREFORE, having fully pled, Plaintiff requests that this action be tried by a jury and prays that judgment be awarded against Defendants pursuant to the Fair Labor Standards Act, South Carolina Payment of Wages Act, the South Carolina Whistleblower Protection Act, and the common law for actual damages in the amount of wages due, treble damages, punitive damages, prejudgment and post judgment interest, actual and consequential damages, liquidated damages, reasonable attorneys' fees and costs incurred in prosecuting this action, and such further relief as this Court deems just and proper.

Respectfully submitted,

**BURNETTE SHUTT & McDANIEL, PA**

s/ Jack E. Cohoon
Jack E. Cohoon (Bar No. 9995)
Sarah J.M. Cox (Bar No. 13166)
912 Lady Street, Second Floor
PO Box 1929
Columbia, South Carolina 29202
Telephone: (803) 904-7914
Fax: (803) 904-7910
jcohoon@burnetteshutt.law
scox@burnetteshutt.law

**ATTORNEYS FOR PLAINTIFF**

Columbia, South Carolina

June 8, 2021