IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Tyler W. Hedgepath, | ) | Civil Action No.: 3:21-cv-01705-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| East Richland County Public Service | ) | |
| District, and Larry Brazell, Jack Morin, and | ) | |
| Jamie Harris in their individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court pursuant to the Motion to Dismiss (ECF No. 15) filed by

Defendants East Richland County Public Service District ("East Richland"), Larry Brazell

("Brazell"), Jack Morin ("Morin"), and Jamie Harris ("Harris") (collectively, "Defendants").

Defendants move the court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss

Plaintiff's causes of action alleging (1) intentional infliction of emotional distress; (2) defamation

*per se*; and (3) civil conspiracy.  For the reasons set forth below, the court **GRANTS IN PART**

and **DENIES IN PART** Defendants' Motion to Dismiss.  (ECF No. 15.)

## I.    RELEVANT BACKRGOUND

This case arises from Plaintiff Tyler Hedgepath's ("Plaintiff") employment with, and

subsequent termination from, East Richland.  (ECF No. 1.)  Plaintiff alleges that throughout his

employment with East Richland, he observed Brazell, Morin, and Harris ("Management

Defendants") use their management positions to benefit themselves and their family members.  (*Id.*

at 3–5 ¶¶ 12–23.)  In June of 2020, Plaintiff made complaints regarding nepotism, failure to pay

wages, unsafe working conditions, and failure to accurately account for employee time and paid

time off to the South Carolina Office of Inspector General, the South Carolina Department of

1

Labor, Licensing, and Regulation, and the United States Department of Labor. (*Id.* at 5 ¶ 25.) On June 22, 2020, after Plaintiff submitted these complaints, he alleges Brazell falsely told the Richland County Sheriff's Department that Plaintiff had threatened to "shoot up the place." (*Id.* at 5 ¶ 27.) When Plaintiff arrived at the office that day, Brazell terminated him in the presence of seven (7) or eight (8) employees and three (3) police officers. (*Id.* at 6 ¶¶ 30–31.) Thereafter, Plaintiff avers that Defendants denied him the opportunity to file a grievance, withheld money and paid time off from his final paycheck, and reported to state officials that Plaintiff had threatened fellow employees and the property of his employer. (*Id.* at 7 ¶¶ 43–45.)

On June 8, 2021, Plaintiff filed this action alleging claims for retaliation under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*; violation of the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 *et seq.* (West 2022); wrongful discharge in violation of public policy; violation of the South Carolina Whistleblower Act, S.C. Code Ann. §§ 8-27-10 *et seq.* (West 2022); and state law claims for intentional infliction of emotional distress, defamation *per se*, and civil conspiracy. (ECF No. 1 at 1.) On June 30, 2021, Defendants filed the Motion to Dismiss (ECF No. 15), asking the court to dismiss Plaintiff's claims for intentional infliction of emotional distress, defamation *per se*, and conspiracy. On July 21, 2021, Plaintiff filed a Response in Opposition (ECF No. 18) to which Defendants submitted a Reply (ECF No. 19).

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6)

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding

the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (*citing Twombly*, 550 U.S. at 556).

B.    South Carolina Tort Claims Act

Under the Eleventh Amendment, federal courts cannot hear claims against a state or its instrumentalities, unless the state has consented to suit. *Fauconier v. Clarke*, 966 F.3d 265, 279 (4th Cir. 2020); *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). In South Carolina, the South Carolina Tort Claims Act, S.C. Code Ann. §§ 15-78-10 *et seq.* (West 2022), (the "SCTCA") "governs all tort claims against governmental entities and is the exclusive civil remedy available in an action against a governmental entity or its employees." *Flateau v. Harrelson*, 584 S.E.2d 413, 416 (S.C. Ct. App. 2003); *see* S.C. Code Ann. § 15-78-20(b). The State and its political subdivisions may be held liable under the SCTCA for their torts as a private individual would be liable, subject to the limitations and exemptions of the Act. *Hawkins v. City of*

*Greenville*, 594 S.E.2d 557, 563 (S.C. Ct. App. 2004) (citing S.C. Code Ann. §§ 15-78-30(d), 15-78-40).  Under the SCTCA, however, either the governmental entity or the employee is liable for a given tort, but not both.  *Newkirk v. Enzor*, 240 F. Supp. 3d 426, 436 (D.S.C. 2017).  "An employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable and the plaintiff must sue the governmental agency itself."  *Id.*; S.C. Code Ann. § 15-78-70(a).  Therefore, an employee who commits a tort while acting "within the scope of his official duties" is not liable unless "it is prove[n] that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude," *id.* § 15-78-70(b); in which case the government is not liable, *id.* § 15-78-60(17).

### III.     ANALYSIS

A.     <u>Intentional Infliction of Emotional Distress</u>

Plaintiff brings a claim for intentional infliction of emotional distress, also known as outrage in South Carolina, against all Defendants.  The SCTCA does not allow a plaintiff to recover for intentional infliction of emotional distress.  *See* S.C. Code Ann. § 15-78-30(f) (providing that "loss" does not include the intentional infliction of emotional harm); *see, e.g.*, *Ward v. City of N. Myrtle Beach*, 457 F. Supp. 2d 625, 647 (D.S.C. 2006).  Under South Carolina law, the Worker's Compensation Act is the exclusive remedy for an intentional infliction of emotional distress claim. *Ward*, 457 F. Supp. 2d at 646–47 (citing *Mcclain v. Pactiv Corp.*, 602 S.E.2d 87, 89 (S.C. 2004)); *see* S.C. Code Ann. § 15-78-60(14) (government entity is not liable for loss arising from any claim covered by the South Carolina Workers' Compensation Act).  Therefore, Plaintiff cannot bring an intentional infliction of emotional distress claim against East Richland or any of the Management Defendants in their official capacities.

As noted above, however, a state employee can be held personally liable for intentional torts committed within the scope of employment if the conduct "constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. § 15-78-70(b). To hold the Management Defendants liable under the SCTCA's "actual malice" exception to the state's limited waiver of immunity, his claim must require proof of conduct that is at least reckless. *Pettigrew v. S.C. Dep't of Mental Health*, No. 3:21-02488-MGL, 2022 WL 410070, at * 5 (D.S.C. Jan. 26, 2022), *report and recommendation adopted*, 2022 WL 407421 (D.S.C. Feb. 10, 2022). A claim for intentional infliction of emotional distress requires a plaintiff to show, in part, that the defendant acted "with intent to inflict emotional distress or acted recklessly." *Andrews v. Piedmont Air Lines*, 377 S.E.2d 127, 129 (S.C. Ct. App. 1989) (citing *Corder v. Champion Rd. Mach. Int'l Corp.*, 324 S.E.2d 79 (S.C. Ct. App. 1984)). Here, Plaintiff alleges that "Defendants intentionally or recklessly inflicted severe emotional distress upon Plaintiff." (ECF No. 1 at 16 ¶ 124.) Thus, Plaintiff's claim for intentional infliction of emotional distress against the Management Defendants in their individual capacities is not necessarily barred by the SCTCA. *See Smith v. Ozmint*, 394 F. Supp. 2 787, 792 (D.S.C. 2005).

Defendants also argue that Plaintiff's intentional infliction of emotional distress claim should be dismissed because "the longstanding legal basis for an outrage claim is that it was never intended to replace existing claims or causes of action, but exists only when no other claim is available." (ECF No. 15-1 at 79 (citing *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 321 S.E.2d 602 (S.C. Ct. App. 1984), *rev'd on other grounds*, 2336 S.E.2d 472 (S.C. 1985).) In *Todd*, the South Carolina Court of Appeals noted that "[t]he tort of outrage was designed not as a replacement for the existing tort actions." 321 S.E.2d at 613. Although the Court noted that an action for defamation was available to the plaintiff in that case, it did not dismiss the plaintiff's claim for

5

intentional infliction of emotional distress on that basis.  Similarly, the court declines to dismiss

Plaintiff's claim at this stage based on the existence of other causes of action.  At this stage, it is

not clear which of Plaintiff's claims will ultimately succeed, and Plaintiff may allege "different

and even inconsistent theories of recovery at the pleading stage."  *In re Bldg. Materials Corp. of

Am. Asphalt Roofing Shingle Prod. Liab. Litig.*, No. 8:12-CV-00082-JMC, 2013 WL 1282223, at

\*10 (D.S.C. Mar. 27, 2013); *see also Poloschan v. Simon*, No. 9:13-1937-SB, 2014 WL 1713562,

at \*14 (D.S.C. Apr. 29, 2014).  Therefore, the Management Defendants are not entitled to dismissal

of Plaintiff's intentional infliction of emotional distress on this basis.

B.    Defamation *per se*

Plaintiff alleges that he was "defamed by statements and actions of the individual

Defendants as agents and servants of Defendant East Richland acting in the course and scope of

their employment," and Defendants do not argue that the Management Defendants were not acting

within the scope of their employment as to this claim.  (ECF No. 1 at 15 ¶ 115.)   Instead,

Defendants argue that the SCTCA bars Plaintiff's defamation claim because the pleadings allege

that there was a malicious intent to harm.  The court notes that, even if the pleadings allege

malicious intent, dismissal would only be warranted as to East Richland and the Management

Defendants in their official capacities on this basis.  In support of their assertion, Defendants cite

to several cases finding defamation claims were barred because the plaintiffs had specifically

alleged false statements were made with malicious intent or intent to harm.  *See Yost v. City of*

*Charleston*, No. 2:09-cv-2024-RMG, 2010 WL 11643356, at \*4 (D.S.C. Oct. 22, 2010) (complaint

alleged that statements were made "maliciously, intentionally and in bad faith"); *Griffin v.*

*Edgefield Cnty. Council*, No. 6:97-0001-13AK, 1998 WL 34193621, at \*4 (D.S.C. May 21, 1998)

("By her own allegations, plaintiff asserts the alleged defamation here was uttered with actual

6

mali[]ce and with intent to harm."); *Yates v. Zumalt*, No. 2:11-02289-CWH, 2015 WL 12910629, at \*3 (D.S.C. Apr. 23, 2015) ("the Complaint alleges intent to harm by Officer Terry"); *Trexler v. Richland Cnty.*, Op. No. 2017-UP-041, 2017 WL 193281, at \*2 (S.C. Ct. App. filed Jan. 18, 2017) (affirming summary judgment based on the circuit court's finding that the plaintiff has admitted the employee acted with actual malice). That is not the case here. Instead, Plaintiff has alleged that the statements were "published with bad faith and without any reasonable effort to determine [] truth or falsity." (ECF No. 1 at 16 ¶ 117.)

Defendants also cite to a case involving a defamation claim against a public official, which requires a showing of malice. *Gause v. Doe*, 451 S.E.2d 408, 409 (S.C. Ct. App. 1994) (explaining that actual malice must be shown in a defamation claim involving a public official). Relevant to Plaintiff's claim, the elements of a defamation claim against a private individual are: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Holtzscheiter v. Thomson Newspapers, Inc.*, 506 S.E.2d 497, 506 (S.C. 1998). If the defamatory meaning of a message or statement is obvious on the face of the statement, the statement is defamatory *per se*. *Id.* at 501. "When a publication is actionable *per se* there arises a common law presumption of implied malice, sometimes called 'malice in law,' 'legal malice,' or 'presumed malice,' which substitutes for common law actual malice." *Id.* at 501 n.3. Notably, in *Yost*, the court rejected an argument that actual malice is a necessary element for defamation *per se*. *Yost*, 2010 WL 11643356, at \*5 ("Taking Defendant's argument to its logical conclusion, it seems Defendant is arguing that a governmental entity can never be liable for a loss resulting from defamation. The Court rejects this

argument."). The *Yost* court ultimately held that a claim based on presumed malice would not be barred by the SCTCA. *Id.* at *6.

Although the Complaint alleges that Defendants' allegations were "false and malicious," (ECF No. 1 at 9 ¶ 59), Plaintiff contends that he "has not pleaded actual malice but has instead allowed for a presumption of implied malice." (ECF No. 18 at 9.) The court notes that, although the Complaint contains numerous allegations that the Management Defendants acted with intent to harm Plaintiff, with regard to the allegedly defamatory statements, the Complaint provides that they were "published with bad faith and without any reasonable effort to determine the truth or falsity of the allegations they contained." (ECF No. 1 at 16 ¶ 117.) The court finds that Plaintiff's defamation claim, as set forth in the Complaint, is not barred by the SCTCA.

Defendants also argue that Plaintiff's allegations do not meet the standard for a *per se* defamation claim. (ECF No. 15-1 at 6.) Defamation is actionable *per se* if "it charges the plaintiff with one of five types of acts or characteristics: (1) commission of a crime of moral turpitude; (2) contraction of a loathsome disease; (3) adultery; (4) unchastity; or (5) unfitness in one's business or profession." *Holtzscheiter*, 506 S.E.2d at 502. Although Defendants contend that "[n]o such allegation has been made[,]" Plaintiff specifically alleges Defendants' statements that he threatened violence charged him with a crime of moral turpitude and led others to believe he was unfit to participate in his profession. (ECF No. 1 at 15 ¶ 114, 16 ¶¶ 119–20.) Thus, accepting as true Plaintiff's well-pleaded allegations and viewing the Complaint in a light most favorable to Plaintiff, the statements allegedly made by Defendants could constitute defamation *per se* because the defamatory meaning is arguably obvious on the face of the statements themselves. *See Holtzscheither*, 506 S.E.2d at 508–09. Therefore, Defendants are not entitled to dismissal of Plaintiff's defamation *per se* claim on the bases set forth in their motion.

C.    Conspiracy

Plaintiff asserts that the Management Defendants, individually and as agents of East Richland, intentionally conspired "to harm Plaintiff for his speaking up about workplace conditions, and because his speaking up endangered the fiefdom that they built through nepotism." (ECF No. 1 at 17 ¶¶ 131–32.)  As such, Plaintiff asserts that the Management Defendants were personally, not professionally, motivated in conspiring against him and acted outside of the scope of their employment with East Richland.  *See Pridgen v. Ward*, 705 S.E.2d 58, 62 (S.C. Ct. App. 2010) (discussing evidence indicating appellants had conspired for "personal reasons that constitute intentional acts outside the scope of their employment").  Plaintiff does not allege that East Richland was actually a party to the conspiracy, and it cannot be held liable for the intentionally tortious conduct of its employees.  Accordingly, Plaintiff's civil conspiracy claim against East Richland is barred by the SCTCA, but Plaintiff's claim can be brought against the remaining defendants as individuals.

Defendants further claim that Plaintiff fails to state a claim for civil conspiracy.  Under South Carolina law, a claim for civil conspiracy requires: (1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to the plaintiff.  *Paradis v. Charleston Cnty. Sch. Dist.*, 861 S.E.2d 774, 780 (S.C. 2021) (overruling prior case law that imposed a requirement of pleading (and proving) special damages for a conspiracy claim).  Although a conspiracy "cannot be found to exist when the acts alleged are those of employees or directors, in their official capacity, conspiring with [a] corporation," individual agents of a corporation are legally capable of conspiracy among themselves.  *Pridgen*, 705 S.E.2d at 62 (S.C. Ct. App. 2010).  Plaintiff has alleged that Brazell, Morin, and Harris "met,

9

conspired, schemed, and planned with others to harm" him.  (ECF No. 1 at 17 ¶ 132.)  As part of this effort, Plaintiff avers the Management Defendants made a false allegation to the Richland County Sheriff's Department causing damages to Plaintiff.  (*Id.* at 17–18 ¶¶ 133–34.)  As such, Plaintiff has satisfied the plausibility requirement of Rule 12(b)(6) as articulated in *Twombly* and *Iqbal*, and his civil conspiracy claims against the Management Defendants in their individual capacities survive dismissal.

## IV.    CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss.  (ECF No. 15.)  Specifically, Plaintiff's intentional infliction of emotional distress and conspiracy claims against Defendant East Richland are dismissed. Accordingly, Plaintiff's claims for retaliation under the Fair Labor Standards Act, violation of the South Carolina Payment of Wages Act, wrongful discharge in violation of public policy, violation of the South Carolina Whistleblower Act, and state law claim for defamation *per se* remain against all Defendants, and Plaintiff's claims for intentional infliction of emotional distress and conspiracy remain as to Defendants Brazell, Morin, and Harris in their individual capacities.

**IT IS SO ORDERED**.

*J. Michelle Childs*

United States District Judge

March 7, 2022
Columbia, South Carolina